Carliss A. McCARTHY, Sr. and Bonnie Jean McCarthy Individually and on Behalf of Their Three Minor Children

v.

DANEK MEDICAL, INC., Sofamor Snc, and Sofamor Danek Group, Inc.

No. CIV.A. 95–1667.

United States District Court,
E.D. Louisiana.

Jan. 5, 1999.

David B. Allen, Stephen M. LaRussa & Associates, Houma, LA, Daniel E. Becnel, Jr., Law Offices of Daniel E. Becnel, Jr., Reserve, LA, for plaintiffs.

William Kearney Christovich, Kevin Richard Tully, Terry Christovich Gay, Christovich & Kearney, LLP, New Orleans, LA, Anthony Vale, Pepper Hamilton, LLP, Philadelphia, PA, for defendants.

## ORDER AND REASONS

LEMELLE, District Judge.

This matter is before the Court for consideration of defendant Danek Medical, Inc.'s motion for summary judgment. This matter involves the plaintiffs' products liability and consortium claims which have been remanded from MDL 1014 in the United States District Court for the District of Pennsylvania. Plaintiffs' claims arise out the attachment of the Compact Cotrel–Dubousset System ("CCD System") into the pedicles of the plaintiff's lumbar spine. The procedure at issue was performed on June 15, 1994, by Dr. Thomas Whitecloud of the Tulane University Medical Center in New Orleans, Louisiana. The purpose of the implant is to provide biochemical stability, so that a solid fusion would develop from the bone graft laid down by Dr. Whitecloud. The CCD System consists of screws, hooks, rods, and other components that allow the surgeon to fashion customized constructs for each patient.

▪ The Louisiana Products Liability Act ("LPLA") imposes liability against a manufacturer of a defective product when that product causes damage. La.Rev.Stat. ann. § 9:2800.51 et seq. The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La.Rev.Stat. ann. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir.1995); *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 706 (5th Cir.1995). Under the LPLA, § 2800.54(B) sets forth the four exclusive theories of recovery:

B. A product is unreasonably dangerous if and only if:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

Plaintiff has alleged in this case that the CCD System, particularly the use of the screw component in the pedicle, is unreasonably dangerous in design under § 9:2800.56 and because of inadequate warning under § 9:2800.57.[1]

Under the LPLA, a product is unreasonably dangerous in design if at the time the product left the manufacturer's control 1) there existed an alternative design for the product that was capable of preventing the claimant's damage, and 2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting the alternative design and the adverse effect, if any, of the alternative design on the utility of the product. La.Rev.Stat. ann. § 9:2800.56. The LPLA also provides that "an adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product." *Id.*

▪ To avoid a summary judgment on the claim of defective design, the plaintiff must present competent evidence that would enable a trier of fact to conclude the two factors listed above. *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir.1994); *McKey v. General Motors Corp.*, 691 So.2d 164, 170 (La.Ct.App.1997). Plaintiff in this instance has presented no expert evidence to support a claim that an alternative design exists or to identify an alternative design. Failure to do so leaves

1. There is no argument from plaintiff that the system is defective in composition or construction or that there was a breach of an express warranty. Therefore the LPLA discussions are limited to the adequacy of the warnings and design defect.

no issue of fact. *Marks v. R.J. Reynolds Tobacco Co.*, 965 F.Supp. 857, 859–60 (W.D.La.1997); *See also, Tauzier v. Dodge*, No. 97–2444, 1998 WL 227170, slip op. at \*5 (E.D.La. May 5, 1998).

■ Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred. *Ashley v. GMC*, 666 So.2d 1320, 1322 (La.App.1996). Without expert or technical evidence to support the contention that the design was defective or to establish an alternative design, plaintiff has failed to create an issue of fact to be left to a jury. *Marks*, 965 F.Supp. at 860; *Hebert v. Miles Pharmaceuticals*, No. 92–4290, 1994 WL 10184 (E.D.La. Jan.13, 1994); *White v. Mossy Oldsmobile, Inc.*, 606 So.2d 33, 35 (La.App.1992).

■ In the instant case, plaintiffs' experts have not offered or contended that alternative designs existed to the CCD System at the time of surgery. Rather, plaintiffs and their experts have confused the existence of alternative methods with alternative designs. In *Theriot v. Danek Medical, Inc.*, C.A. 94–2646"F" (E.D.La. Dec. 5, 1997), the trial court granted summary judgment in favor of Danek et al under the LPLA. The Court held that the plaintiff's evidence, like Mr. McCarthy's, did not prove the existence of an alternative design. Rather, plaintiffs' evidence only established "surgical alternatives to the pedicle screws." *Theriot*, at p. 7 (Dec. 5, 1997). In recognizing that the only remedies available are those under the LPLA, the *Theriot* Court also held that Louisiana does not recognize any claim for a manufacturer's violation of the Food and Drug Administration's regulations. The Court also specifically rejected the plaintiffs' claims based on fraudulent misrepresentation and conspiracy citing *Jefferson v. Lead Industries Ass'n*, 930 F.Supp. 241, 245 (E.D.La.1996), *aff'd*, 106 F.3d 1245 (5th Cir.1997).

In a second opinion entered January 26, 1998, the *Theriot* court denied the plaintiffs' motion for reconsideration recognizing that the "new evidence" plaintiffs presented were two articles which addressed alternative procedures, not designs, to pedicle screws. In a third opinion entered August 4, 1998, the Court denied plaintiffs' second motion for relief from final judgment. In that motion, plaintiffs sought reconsideration based on more "new evidence" discovered in MDL 1014 related to other spinal systems. Judge Feldman found that the design "alternatives" in those systems were discoverable prior to the first motion and therefore denied the motion for reconsideration. He also reasoned that plaintiffs had not argued that other pedicle screw systems were better designed than the CCD System. Instead, as here, Theriot condemned all pedicle screw designs and argued that the only safer alternative was another procedure.

This Court can not find any supportable difference in the medical and legal conclusions which must be reached in this case. Mr. McCarthy has presented expert evidence which identifies numerous alternative methods, or surgical alternatives, which can be used to attempt fusion. As noted by counsel, alternative methods were included in the CCD System package itself, i.e. wires, hooks, and sacral screws. Plaintiffs misread defendant's reply memorandum as an admission that alternative "designs" existed. That is not so.

Defendant has argued that, if plaintiffs' arguments that hooks and wires, etc. are in fact "alternative designs" then there is no disputed fact that the alternative was available at the time of plaintiff's surgery and in fact being manufactured by Sofamor Danek at the time of plaintiff's surgery. Therefore, defendant contends, it was the surgeon, and the plaintiff, who chose the off-label pedicle screw method and not a "defect" in the design of the CCD System or its components which led to plaintiffs' claims.

The generalities urged against the pedicle screw procedures offered by plaintiffs' expert, Dr. Alexander, have been rejected time and again by various courts which found him unqualified to offer an opinion

or rejected his conclusions finding that they did not prove a design defect. *See e.g. In re Orthopedic Bone Screw Prod. Liab. Lit.,* 1997 WL 39583 (E.D.Pa. Jan.23, 1997); *Theriot,* Dec. 5, 1997 op. at p. 8, n. 3; *Talley v. Danek Medical,* 7 F.Supp.2d 725, 732 (E.D.Va.1998).

In addition, § 9:2800.56 also provides that if the manufacturer used reasonable efforts to provide adequate warnings to users and handlers, that is to be considered in determining the likelihood of damage to plaintiff. In this case, the summary judgment evidence reflects that the warnings were adequate for the reasons to follow.

 With respect to the failure to warn, plaintiff must establish a connection between the manufacturer's omission and the damage suffered. *Delery v. Prudential Ins. Co.,* 643 So.2d 807, 814 (La.Ct.App.), *writ denied,* 648 So.2d 393 (La.1994). The LPLA in part defines an adequate warning to be one that "would lead an ordinary reasonable user" to contemplate danger in using or handling the product. § 9:2800.53(9).[2]

 Under Louisiana law generally, a manufacturer of medical drugs and devices has no duty to warn the consumer directly of any risks or contraindications associated with its product. *Mikell v. Hoffman–La-Roche, Inc.,* 649 So.2d 75, 80 (La.App. 1994). The *Mikell* court also described how this obligation is met:

> The obligation to the consumer is fulfilled when the prescribing or treating physician is informed of any potential side effects or risks from the drug's use so that they may intelligently decide on

its use and advise the patient. The doctor acts as an informed intermediary, and the decision to use the drug in a particular circumstance rests with the doctor and the patient, not the manufacturer.

(citations omitted) *Id.* at 80.[3] The Federal courts have also recognized Louisiana's use of this learned intermediary doctrine even under the LPLA.

 In this case, there is no dispute that Dr. Whitecloud was extraordinarily knowledgeable about the risks associated with pedicle screw fixation and the CCD System itself. Though the plaintiff cites this for another reason, Dr. Whitecloud was also engaged in presentations and seminars on this same product and its use with pedicle screws. In addition, plaintiff has offered nothing but rhetoric to refute Dr. Whitecloud's learned experience. The blanket, unsupported allegation that other testing should have been done to reveal unknown risks does not refute the well supported summary judgment motion. It is plaintiffs' burden to prove the existence of a risk not disclosed.

In this case, there is no factual dispute that the risk associated with the CCD System with use of pedicle screws were known by Dr. Whitecloud and were disclosed to plaintiff, who acknowledged same on the informed consent form he signed. Dr. Whitecloud also knew of the status of the FDA labeling clearance. There is also no evidence at all that anything would have or should have changed Dr. Whitecloud's decision to use this state of the art fusion method.

---

**2.** This generally is not a technical area that would require expert proof. *Wright v. Kemper National Ins.,* No. 94–1279, 1995 WL 527615 (E.D.La.1995).

**3.** In another case, *Cobb v. Syntex Laboratories, Inc.,* 444 So.2d at 205–206, the plaintiff's physicians stated that they had received and reviewed the material supplied by the manufacturer of birth control pills and that they considered the warnings adequate. The trial court concluded that, under those circum-

stances, the plaintiff's physicians were sufficiently warned of the side effects and risks of the drug. The trial court determined that the defendant drug manufacturer had discharged its obligation to adequately warn the prescribing physician. In affirming the trial court judgment, the appellate court determined that the record supported the trial judge's conclusion that the physicians had been adequately warned by the manufacturer and that the manufacturer breached no duty in that respect.

In his supplemental reply, plaintiff references *McMillen v. Danek Medical, Inc.,* C.A. 95–1796"B" noting that this Court denied Danek's similar summary judgment in that case. In *McMillen,* the Court ordered additional discovery on the issue of the possibility of an alternative design existing at the time that would have prevented McMillen's screw from backing-out or turning etc. only on the basis that the plaintiff in that case had presented some summary judgment medical evidence that the backing-out of the pedicle screw may have caused his pain. If in fact there was an alternative design that could have prevented the backing of the screw, then perhaps that plaintiff could establish an alternative design and causation under the LPLA, at least sufficient to survive summary judgment. In this case, however, there is no evidence that the CCD System itself caused plaintiff any pain; it is alleged only that the fusion failed, a known risk, and plaintiff's pain recurred resulting in a second surgery. Unlike *McMillen,* there is nothing before this Court, other than counsel's unsupported speculation, that would or could identify any other design to any part of the CCD System available at the time that could have altered Mr. McCarthy's results.

To that end, plaintiffs' argument regarding the FDA "licensing" is a red herring.[4] There is no private right of action under the FDCA. *See Borskey v. Medtronics,* 1998 WL 122602 (E.D.La. Mar.18, 1998). Furthermore, the FDA is the agency that clears labels not uses. It is unrefuted here that "off-label" use of this product is not illegal and is in fact common place.

Finally, defendant's argument regarding lack of medical causation is well founded. All of the side-effects to the pedicle screw systems mentioned by plaintiff, i.e. loosening of screws, continued pain, failed fusion, and removal/second surgery, were known

risks of the surgery, any fusion surgery. The same risks are listed for fusion using wires, hooks, and sacral screws. Nevertheless, there is no "defect" in the components or the CCD System itself which caused the failure of Mr. McCarthy's fusion. The fact that another method of fusion may have had different results, which has not been established by plaintiffs' experts, does not mean that the CCD System was defective or caused plaintiff's failed fusion. *See Wheat v. Pfizer, Inc.,* 31 F.3d 340 (5th Cir.1994). For these reasons,

**IT IS ORDERED** that Danek Medical Inc.'s motion for summary judgment (Doc. 24) be and hereby is **GRANTED.**

---

4. The Third Circuit opinion in *In re Orthopedic Bone Screw Prod. Liab. Lit.,* 159 F.3d 817 (3rd Cir.1998), cited in plaintiffs' supplemental opposition is not relevant here. In that case, the Third Circuit held only that if the state law allowed a fraudulent misrepresentation claim against the manufacturer, the legal basis therefor must be examined before the district court, Judge Bechtle, granted a motion to dismiss. No such claim exists in Louisiana since the LPLA is the exclusive remedy. *Borskey,* 1998 WL 122602 at *4.