IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30641
_____


MARY LOUISE GRENIER;
STEVEN GRENIER,

                                    Plaintiffs-Appellants,

                    versus

MEDICAL ENGINEERING CORP., ET AL,

                                             Defendants,

MEDICAL ENGINEERING CORP.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
            Western District of Louisiana
_____

March 8, 2001

Before JOLLY, MAGILL[*] and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     This appeal arises from a products liability case involving
silicone gel breast implants.  In March 1983, Mary Grenier received
breast implants manufactured by Medical Engineering Corporation
("MEC").  Eleven years later, Grenier sued MEC after learning that
silicone gel had leaked or "bled" through the implant shell.  The

_____

          [*]Circuit Judge of the Eleventh Circuit, sitting by
designation.

district court granted summary judgment for MEC. Grenier v. Medical Engineering Corp., 99 F.Supp.2d 759 (W.D. La. 2000). The district court concluded that (1) the 1988 Louisiana Products Liability Act applied to Grenier's claims; (2) Grenier could not prevail on her defective design and failure to warn claims because she had presented no evidence of a product defect; and (3) Grenier's redhibition claim was time-barred. We affirm.

I

Mary Grenier underwent breast augmentation surgery following a double mastectomy in March 1983. The operating physician inserted silicone gel breast implants manufactured by MEC.

By the early 1990s, Grenier began experiencing health problems that she associated with her breast implants. In 1994, after diagnostic tests indicated that the implant in Grenier's left breast might have ruptured, Grenier's physician surgically removed both implants. Although the surgeon concluded that the left implant had not ruptured, he also discovered 75 to 100 cc of silicone gel outside the implant shell but within the scar tissue capsule in Grenier's left breast. The district court and the parties refer to this phenomenon of "silicone gel pass[ing] through the shell of the implant without any noticeable structural defect in the implant shell itself" as "gel bleed." Grenier, 99 F.Supp.2d at 761.

Grenier filed a complaint against MEC in the United States District Court for the Western District of Louisiana in May 1994.

2

Grenier's case was then transferred to the Multi-District Litigation Court (MDL-926) in the Northern District of Alabama, where it remained for four and a half years. For reasons not relevant to this appeal, Grenier's case was remanded to the district court in Louisiana in January 1999.

Grenier's complaint listed fifteen theories of liability, including defective design, defective manufacture, failure to warn of the potentially dangerous nature of the product, breach of warranty, negligent misrepresentation, and redhibition. In April 2000, the district court granted MEC's motion for summary judgment and dismissed all of Grenier's claims. Grenier now appeals.[1]

II

We review a district court's grant of summary judgment de novo, applying the same substantive test set forth in Federal Rule of Civil Procedure 56(c). See Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999).

A

The first issue on appeal is whether the 1988 Louisiana Products Liability Act ("LPLA") applies to Grenier's claims. This question is significant to the various theories asserted by Grenier because the LPLA establishes four exclusive theories of product liability: defective design, defective manufacture, failure to

---

[1]While Grenier's appeal was pending, this court granted the appellees' unopposed motion to dismiss as to appellee Surgitek, Inc.

3

warn, and breach of warranty.  See  LA. REV. STAT. ANN. § 9:2800.52 (West 1997)("A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the Chapter.").  The LPLA applies only to causes of action that accrued on or after September 1, 1988.  Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir. 1995). Therefore, the narrow question before us is when Grenier's cause of action accrued.

Under Louisiana law, "A cause of action accrues when a plaintiff may bring a lawsuit.  In a negligence action, for instance, the claimant must be able to allege fault, causation, and damages."  Id. at 526-27.  In this case, the cause of action accrued when Grenier suffered some physical injury because of her breast implants.[2]

Grenier has presented no medical evidence of when her injuries may have occurred.  (The only evidence remotely relevant to this question is Grenier's testimony that she began experiencing pain in her back and shoulders sometime after 1990.)  In this respect,

---

[2]The district court failed to differentiate the question of when damages occurred from the question of when the plaintiff became aware of the damages.  See Grenier, 99 F.Supp.2d at 762.  As we understand Louisiana law, the first question determines when a cause of action accrues; the second determines when a tolled prescription period begins to run.  Thus, in cases involving latent injury, the cause of action accrues when damages are first suffered, but the prescription period does not run until such time as a reasonable plaintiff would become aware of the connection between her injured condition and the defendant's tortious actions. See Brown, 52 F.3d at 527.

4

Grenier's case is indistinguishable from <u>Arabie v. R.J. Reynolds Tobacco Co.</u>, 698 So.2d 423, 425 (La. App. 5 Cir. 1997), in which a smoker, who was diagnosed with lung cancer in 1992, presented no evidence as to when the damage to his lungs began. A Louisiana appeals court held that the LPLA was the plaintiff's exclusive remedy because he had "failed to introduce a single piece of evidence" supporting his claim that his lung damage occurred prior to 1988. <u>Id.</u> Similarly, Grenier has introduced no evidence--and certainly no medical expert testimony--indicating that she suffered any injury prior to September 1988, when the LPLA took effect.

Grenier, relying exclusively on <u>Cole v. Celotex Corp.</u>, 599 So.2d 1058 (La. 1992), argues that her cause of action accrued in March 1983, when she received the breast implants. But <u>Cole</u> is not relevant to the issue before us. <u>Cole</u> involved a comparative fault statute that applied to "claims *arising from events* that occurred" after August 1980. The Louisiana Supreme Court explained that in long-latency occupational disease cases, the "events" contemplated by the statute would include "repeated tortious exposures" to asbestos or other disease-causing agents. <u>Id.</u> at 1066. Because the plaintiffs in <u>Cole</u> were exposed to asbestos before August 1980, the comparative fault statute did not apply. But, as the Louisiana Supreme Court recently observed, the holding in <u>Cole</u> "turned on [the] unique language" of the comparative fault statute. <u>Walls v. American Optical Corp.</u>, 740 So.2d 1262, 1271-72 (La. 1999). To

5

repeat, the comparative fault statute did not apply to causes of action that *accrued* after the effective date of the statute; instead, the statute applied to causes of action "arising from events" occurring after the effective date. This unusual statutory language was highly significant in <u>Cole</u>, where the plaintiff's exposure to asbestos (the "events" giving rise to the suit) occurred many years before he suffered damages from the exposure and before his cause of action accrued. The LPLA, on the other hand, applies to causes of action that accrued after the statute's effective date. For this reason, the "exposure rule" of <u>Cole</u> cannot be read so expansively as to apply to LPLA cases.

In sum, although the events giving rise to Grenier's injuries occurred in 1983, that fact has no bearing on the question of when the injuries occurred and the cause of action accrued. As there is no evidence suggesting that the damages occurred before September 1988, the LPLA applies to Grenier's claims.

B

As noted above, the LPLA establishes four exclusive theories of liability: defective design, defective construction, failure to warn, and breach of warranty. The district court dismissed all of Grenier's LPLA claims because she had failed to present any competent evidence of a defect.

Grenier tried to prove that the implants were defective by calling the court's attention to <u>Barrow v. Medical Engineering</u>

6

Corp., 1998 WL 812318 (M.D. Fla. 1998), a lengthy district court opinion in a case involving a different type of implant and different injuries. Grenier did not argue that MEC was collaterally estopped from relitigating certain factual issues related to question of defect. See, e.g., RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1290 (5th Cir. 1995). Instead, in her complaint she simply "adopt[ed]" twenty-seven pages of the Barrow court's findings of fact. Because this method of presenting evidence is not allowed under Rule 10(c) or any other Federal Rule of Civil Procedure, the district court properly refused to consider the Barrow opinion as evidence.

Because the Barrow opinion is not evidence, the record is devoid of proof regarding defective design or construction. This lack of evidence is fatal to Grenier's LPLA claims because, as this court has noted, "'Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred.'" Krummel v. Bombardier Corp., 206 F.3d 548, 551 (5th Cir. 2000)(quoting McCarthy v. Danek Medical, Inc., 65 F.Supp.2d 410, 412 (E.D. La. 1999)).

C

Grenier's most plausible LPLA claim is that MEC failed to warn her or her physician about the possibility of "gel bleed."

The district court dismissed Grenier's failure to warn claim because she had presented no evidence of a defect: "Without an adequate showing of a dangerous defect, this Court cannot impose a

7

duty to warn on [MEC]." Grenier, 99 F.Supp.2d at 765. The district court's formulation of this rule may be somewhat misleading. The language of the LPLA provides that a plaintiff may prevail on her failure to warn claim if "[1] the product possessed a characteristic that may cause damage and [2] the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." LA. REV. STAT. ANN. § 9:2800.57 (West 1997). Thus, even if a product is not defectively designed or constructed, a manufacturer may still have a duty to warn consumers about any characteristic of the product that unreasonably may cause damage.[3] See, e.g., Hesse v. Champ Serv. Line, 758 So.2d 245, 249 (La. App. 3 Cir. 2000); Dunne v. Wal-Mart Stores, Inc., 679 So.2d 1034, 1038 (La. App. 1 Cir. 1996).

The exact question under section 9:2800.57, then, is not whether MEC failed to warn Grenier that its breast implants were defective. To prevail on her failure to warn claim, Grenier would need to show only that "gel bleed" is a potentially damage-causing characteristic of MEC's breast implants and that MEC failed to use reasonable care to provide an adequate warning.

However, Grenier presented no evidence about the cause, frequency, severity, or consequences of "gel bleed" with regard to

_____

[3]Of course, manufacturers have no duty to warn of dangers that are obvious to ordinary users. See Morgan v. Gaylord Container Corp., 30 F.3d 586, 591 n.7 (5th Cir. 1994).

8

the implants at issue in this case.  Without a proper understanding of the implants' damage-causing characteristics, the scope of MEC's duty to warn is unclear.  For this reason, we conclude that Grenier's failure to warn claim was properly dismissed.[4]

D

Grenier's principal non-LPLA claim is in redhibition. Redhibition is the avoidance of a sale on account of some defect in the product that would render an item useless or so inconvenient to use that it would be presumed that a buyer would not have bought the thing had he known of the defect.  LA. CIV. CODE ANN. art. 3492 (West 1999).[5]

---

[4]Grenier also argues that the district court misconstrued Louisiana's learned intermediary doctrine.  (In cases involving medical devices, the manufacturer's duty to warn is owed to the physician, not the patient.)

As an alternative ground for dismissing the failure to warn claim, the district court concluded that Grenier had presented no evidence that "a proper warning would have changed the decision of the treating physician, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product."  Willett v. Baxter Int'l, 929 F.2d 1094, 1098-99 (5th Cir. 1991).  Grenier's lone item of evidence was a four-page affidavit from a plastic surgeon (who was not Grenier's treating physician) who stated that he would not have recommended breast implants if MEC had warned about the possible dangers of "gel bleed."  This evidence of what the affiant personally would have done cannot suffice to prove causation under the learned intermediary doctrine.  As this court has explained, in order to show causation, "a plaintiff may introduce either objective evidence of how a reasonable physician would have responded to an adequate warning, or subjective evidence of how the treating physician would have responded."  Thomas v. Hoffman-LaRoche, Inc., 949 F.2d 806, 812 (5th Cir. 1992)(applying Mississippi law).  In this case, Grenier presented neither.

[5]The exclusivity provisions of the LPLA have been held not to be a bar to redhibition actions.  "The LPLA was never intended to

9

The district court ruled that Grenier's redhibition claim was time-barred. In 1995, the Louisiana legislature amended the redhibition statutes to provide that all redhibition claims "prescribe ten years from the time of the perfection of the contract regardless of whether the seller was in good or bad faith. See [Civil Code] Art. 3499." LA. CIV. CODE ANN. art. 2534, Revision Comment (b). Relying on this comment, the district court concluded that Grenier's redhibition claim was not timely because it was filed in May 1994, eleven years after the contract between Grenier and MEC had been perfected. Grenier, 99 F.Supp.2d at 763-64.

The district court failed to address the question whether this new, ten-year prescription period applies retroactively to contracts formed before the effective date of the amendment. In Cole v. Celotex, the Louisiana Supreme Court articulated the test for determining whether a statute may be applied retroactively. The first step is to "ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end." Cole, 599 So.2d at 1063.

The January 1995 revisions to Article 2534 were part of a 1993 Act ("Act 841") that revised Book III, Title VII of the Civil Code. The note entitled "Revision of Title VII" reads as follows: "The

eliminate redhibition as a means of recovery against a manufacturer. . . . The right to sue in redhibition *for economic loss* still exists." Monk v. Scott Truck & Tractor, 619 So.2d 890, 893 (La. App. 3 Cir. 1993)(emphasis added).

10

provisions of this Act shall have prospective application only and shall not affect any sales transaction executed before January 1, 1995, which sales transactions shall be governed by the law in effect prior thereto." SEE WEST'S LA. STAT. ANN., CIVIL CODE, Vol. 10, p. 2. The only possible conclusion, then, is that the legislature intended that the revised Article 2534 (including the ten-year prescription period) should apply only to those contracts perfected after January 1, 1995.

Notwithstanding this expression of legislative intent, the district court assumed that Article 2534 may be applied retroactively. Grenier, 99 F.Supp.2d at 763-64; see also Tiger Bend, LLC v. Temple-Inland, Inc., 56 F.Supp.2d 686 (M.D. La. 1999). Although the general rule is that prescriptive periods are treated as procedural laws and apply retroactively, courts must still address the threshold question of legislative intent. According to Cole, when the legislature does not intend for a statute to apply retroactively, the court's "inquiry is at an end."[6] The district

---

[6]Moreover, the Louisiana Supreme Court has recognized that the retroactive application of prescription periods may, in some cases, raise due process problems. In Lott v. Haley, 370 So.2d 521, 524 (La. 1979), the Louisiana Supreme Court held that "where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process" in both the federal and the state constitutions. Thus, a prescription period may not be applied retroactively if it would "eliminate [a] plaintiff's vested right to sue on his pre-existing cause of action without providing a reasonable period following its enactment to assert his claim." Id.; see also Falgout v. Dealers Truck Equipment Co., 748 So.2d 399, 407-08 (La. 1999). These decisions suggest that even if the legislature had intended Article 2534 to apply retroactively, the

11

court thus erred in dismissing Grenier's redhibition claim as time-barred.

MEC presents several alternative reasons why summary judgment is proper on the redhibition claim.  As we have often explained, this court may affirm a summary judgment on any basis raised below and supported by the record.  See, e.g., Lady v. Neal Glaser Marine, Inc., 228 F.3d 598, 601 (5th Cir. 2000).  In its motion for summary judgment, MEC pointed out that a redhibtion claim requires a showing of some vice or defect in the thing sold and that Grenier had failed to submit evidence on the alleged defects in MEC's breast implants.  Because she presented no competent evidence of defect, Grenier's redhibition claim is without merit.

E

Finally, Grenier asks this court to remand the case to reopen discovery.  For obvious reasons, Grenier would like more time to prepare expert reports, depose expert witnesses, and prepare dispositive motions.  The basis for her request is that she proceeded pro se from July 1998[7] until December 1999, several weeks after MEC had filed its motion for summary judgment.  However, we see no equitable reasons for remanding this case.

Louisiana courts would have permitted Grenier's redhibition claim to proceed.

[7]In a motion presented to the district court, Grenier stated that she had "fired" her first attorney in July 1998, while the case was still pending in the MDL court.  Her first attorney did not file a motion to withdraw until March 1999 and was not formally dismissed until June.

12

This case was filed in May 1994, immediately transferred to the MDL court, and then remanded to the district court in January 1999. Although we accept Grenier's contention that she contacted six attorneys between March and September 1999, none of whom decided to enroll as counsel, we must also note that the record suggests that Grenier was not averse to proceeding pro se. Even though she was pro se, Grenier chose to proceed with the case during the spring of 1999 and requested a status conference in July, at which time the district court encouraged her to obtain an attorney unless she wanted to proceed pro se. Grenier never requested a continuance during these stages in the litigation. In August, the court issued a scheduling order with deadlines for witness lists, designation of experts, and dispositive motions. Grenier missed the first of these deadlines, and there is no indication that she attempted to notify the court in advance that she would be unable to meet the deadline. Three weeks after the deadline had passed, Grenier sought a continuance and filed a motion to upset the scheduling order.[8]

In December 1999, Grenier finally found a second attorney, who has performed admirably under the circumstances. Over the next few months, the district court held MEC's motion for summary judgment in abeyance, gave Grenier extra time to file motions and depose

---

[8]In this October 1999 motion, Grenier requested that the case be continued until November 2000, by which time her husband would have finished law school and passed the Louisiana bar exam.

13

witnesses, and allowed her to amend her complaint (twice), add three expert witnesses to her witness list, and file (out of time) an affidavit in opposition to MEC's motion for summary judgment. Finally, on April 25, the court granted MEC's motion for summary judgment and dismissed all of Grenier's claims.

Based on our review of the record, we believe that Grenier had ample opportunity to present evidence supporting her claims, but she failed to do so. Under these circumstances, we find no reason to remand the case to reopen discovery.

III

For the reasons outlined above, the summary judgment for MEC is

A F F I R M E D[9]

---

[9]The appellants' motion to certify a question of law to the Louisiana Supreme Court is DENIED.

14