**Vicki HINSON,**

v.

**MENTOR CORPORATION, INC., et al.**

**No. Civ.A. 01–134–A.**

United States District Court,
M.D. Louisiana.

June 7, 2002.

Robert H. Harrison, Jr., Attorney at Law, Denham Springs, LA, for plaintiffs.

Edward J. Sebold, Mark A. Whitt, Jones, Day, Reavis & Pogue, Cleveland, OH, James L. Trinchard, Trinchard & Trinchard, New Orleans, LA, for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by defendants, Mentor Corporation and Mentor H/S, Inc. ("Mentor"), for summary judgment (doc. 12). Plaintiff has made no response to the motion, which leaves the court in the dark as to how the plaintiff views the motion. Jurisdiction is based upon complete diversity of citizenship, 28 USC § 1332. There is no need for oral argument.

## Background

On December 22, 2000, Vicki Hinson filed this civil action for personal injuries sustained as a result of the implantation of a defective mammary prosthesis manufactured and sold by defendants. Plaintiff alleges that, in April of 1996, plaintiff underwent breast augmentation surgery and the implantation of two Siltex saline filled mammary prosthesis. Plaintiff alleges that subsequently, on or about December 27, 1999, the right implant ruptured. Plaintiff thereafter underwent two surgical procedures for the removal of the implants and the repair and removal of scar tissue and similar repairs.

Defendants filed a notice of removal in this court on February 9, 2001, on the basis of complete diversity of citizenship. Defendants filed an answer to the petition for damages on February 28, 2001, and the instant motion for summary judgment on February 25, 2002.

## Undisputed Facts

The following undisputed material facts are established by the record and are taken from the Statement of Undisputed Facts filed by defendants.[1] Pursuant to LR56.2M, all material facts set forth in the statement required to be served by the party moving for summary judgment are deemed admitted, for the purposes of the motion, unless specifically denied.[2] Since plaintiff has seen fit to make no response to the motion, defendant's statement of undisputed material facts will be deemed admitted by plaintiff.

1. Mentor Corporation makes and sells various medical devices used in cosmetic and reconstructive surgery, including saline-filled breast implants.

2. Mentor H/S, Inc., now known as Mentor Texas, Inc., is a wholly owned sub-

---

1. Doc. 13.

2. LR56.2M.

sidiary of Mentor Corporation and performs the manufacturing and assembly function for Mentor's breast implant product line.

3. Breast implants are restricted by Federal law for sale only by or on the order of a licensed physician.

4. Plaintiff underwent breast augmentation surgery on December 21, 1992, at which time she was implanted with two Mentor Siltex Saline–Filled Mammary Prostheses, Catalog No. 354–2645, Lot No. 68266.

5. On December 26, 1996, plaintiff's left implant was removed and replaced. The replacement implant was a Mentor Siltex Saline–Filled Mammary Prosthesis, Catalog No. 354–2645, Lot No. 150432.

6. Each device in production 150432 was inspected prior to leaving Mentor's manufacturing facility. All devices released to finished goods were found to meet Mentor's design specifications and performance standards. The devices in Lot 150432 were released to finished goods inventory on September 13, 1996.

7. On January 27, 2000, both of plaintiff's implants were removed.

8. The description contained in the January 27, 2000 Operative Report states that upon removal, one implant was noted to be intact while the other was noted to be deflated. The Operative Report refers to both implants as "left breast" or "left implant."

9. Mentor's product evaluation department maintains records of implants received by it for evaluation. Mentor has no record of receiving either of plaintiff's implants removed on January 27, 2000 for evaluation.

10. Plaintiff is unaware of any tests, simulations or experiments performed on the implant removed on January 27, 2000.

11. Mentor provides a Product Data Insert Sheet (PIDS) with all of its breast implant products.

12. Page 3 of the PIDS, in the section "Patient Education and Informed Consent," states: "Patients should be advised that breast implants should not be considered lifetime implants due to the inherent nature of silicone implants, implant procedures and potential physiological reactions."

13. Page 10 of the PIDS, in the section "PRECAUTIONS," states: "Mentor H/S is aware that a small percentage of saline-filled implants will leak over an undefined period of time and long-term results cannot be guaranteed. Prospective patients should be made aware of the possibility of deflation (see ADVERSE REACTIONS section of this insert)."

14. Page 12 of the PIDS, in the section, "WARNINGS," states: "Patients should be advised that the breast implants should not be considered lifetime implants. The life expectancy of the implant is unknown."

15. Pages 14 through 18 of the PIDS lists potential ADVERSE REACTIONS. One of the listed adverse reactions is **Deflation of the Implant** (Emphasis in original). The causes of deflation include crease fold failure, interoperative or postoperative trauma, excessive stresses or manipulations during normal daily activities, trauma to the breast, tissue ingrowth, underfilling or overfilling the implant, damage from surgical instruments, closed capsulotomy, shell abrasion, capsular contracture, and "origins which are simply unknown."

16. Page 21 of the PIDS contains a PRODUCT INFORMATION DISCLOSURE which "expressly disclaims all warranties, whether written

or oral, statutory, express or implied, by operation of law or otherwise, including, but not limited to, any implied warranties of merchantability, fitness or design. Mentor H/S shall not be liable for any direct, incidental or consequential loss, damage or expense, directly or indirectly arising from the use of this product."

17. By Order dated September 10, 1993, the United States District Court for the Northern District of Alabama entered final judgment in the case *Butler, et al v. Mentor Corp., et al,* CV–93–P–11433–S, 1993 WL 795477 (N.D.Ala. June 2, 1993). As explained in the Order and in a subsequent Notice of Proposed Distribution Plan for the Mentor and Bioplasty Funds, "[A]ll claims against the Mentor defendants relating to implantations occurring before June 1, 1993, are to be resolved and paid in accordance with the terms of this settlement and cannot be otherwise pursued in either federal or state courts against the Mentor defendants, and Mentor-implant recipients cannot 'opt out' or now object because of dissatisfaction with the amount or terms of the settlement."

### Argument

In support of the motion, Mentor first argues that, by virtue of the no opt-out, limited fund settlement for all claims against Mentor arising from implantations prior to June 1, 1993 approved by the United States District Court for the Northern District of Alabama, any claims regarding plaintiffs December 21, 1992 implantations are barred.

Mentor further argues that plaintiff cannot produce evidence that her replacement left implant, implanted on December 26,

1996 and removed January 27, 2000, was unreasonably dangerous within the meaning of the Louisiana Products Liability Act, La.R.S. 9:2800.51 *et seq.* ("LPLA"). Mentor submits that the implant was never returned to Mentor for evaluation and plaintiff is unaware of any simulations, tests or experiments performed on the implant. Mentor further submits that, since plaintiff has not retained any experts, plaintiff cannot maintain a design defect claim as there is no issue of fact for a jury. Mentor argues that the uncontroverted evidence shows that the implant was inspected before it left Mentor's control and the implant met Mentor's specifications and was free of any defects.

With regard to any claim that the replacement left implant was unreasonably dangerous due to any failure to warn, Mentor contests this claim on the basis that Mentor's product insert specifically and repeatedly warns of the risk of deflation, and thus plaintiff cannot produce evidence that Mentor's warnings were in any way inadequate.

Mentor further argues that the existence of a defect cannot be implied or assumed. Mentor argues that no evidence exists to show why or how the implant purportedly leaked, nor to establish that the cause of the leak is attributable to a defect.

### Law and Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support

---

**3.** Fed.Rule Civ.P. 56(c).

the non-moving party's case.[4] After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. The non-movant must produce more than a mere scintilla of evidence in its favor, and may not rest upon mere allegation or denials of its pleading.[5] The court must resolve all factual inferences in favor of plaintiff.[6]

The basis for federal jurisdiction in this case is diversity of citizenship, therefore Louisiana substantive law applies.[7]

The medical evidence and the undisputed facts submitted in this matter establish the following:

1. Plaintiff underwent breast augmentation surgery for the implantation of two breast implants in 1992.

2. Plaintiff's left breast implant was removed and replaced in 1996.

3. Both the right implant and the left replacement implant were removed in 2000. One of the implants was noted to be deflated.

■ However, the petition alleges the following:

1. Plaintiff underwent breast augmentation surgery for the implantation of two breast implants in 1996.

2. The implants were removed in or around 1999, when the right implant deflated.

The undisputed evidence in this matter establishes that plaintiff's right implant, alleged to have deflated in 1999, was originally implanted in 1992. Pursuant to the no opt-out, limited fund settlement for all claims against Mentor arising from implantations prior to June 1, 1993 approved by the United States District Court for the Northern District of Alabama, plaintiff's claim regarding the right implant is barred.

With regard to the 1996 procedure, the undisputed evidence establishes that the procedure was a replacement procedure for the left implant in December, not a dual implantation procedure in April as alleged in the petition. The left breast was deflated.

Plaintiff alleges injuries sustained as a result of the following defects and acts of negligence by Mentor:

"a. By the said implants being unreasonably dangerous in composition and/or construction;

b. By the said implants being unreasonably dangerous dangerous (*sic*) in design;

c. By the said implants not being reasonable (*sic*) fit for their intended purpose;

d. Any other act of negligence or fault which may be proven at the trial of this matter." [8]

Plaintiff's claims therefore arise under the Louisiana Products Liability Act, La.R.S. 9:2800.51 *et seq.*, and redhibition, La.C.C. art. 2520 *et seq.*

The LPLA establishes four theories of liability: 1) defective design, 2) defective construction, 3) failure to warn, and 4) breach of warranty. Plaintiff has made claims only for defective design and defective construction of the implants under the LPLA.

**4.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**5.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**6.** *Abbott v. Equity Group, Inc.*, 2 F.3d 613 (5th Cir.1993).

**7.** *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir.1997).

**8.** Petition for Damages, para. 7.

Under La.R.S. 9:2800.56, a product is unreasonably dangerous in design if, at the time it left the manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.[9]

Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that an injury occurred.[10] Plaintiff has produced no evidence whatsoever to prove either prong of this analysis. Plaintiff cannot possibly prove an alternate design claim on the mere allegation that the product contained a design defect. Plaintiff must have evidence of an alternate design capable of preventing her alleged damage. The court finds in favor of Mentor for this claim.

Under La.R.S. 2800.55, a product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.[11] The undisputed evidence in this case demonstrates that Mentor performed a quality control inspection in production prior to leaving Mentor's manufacturing facility and found the implants to meet Mentor's design specifications and performance standards. Plaintiff has produced no evidence to the contrary. The court finds in favor of Mentor for this claim.

With regard to the claim by plaintiff that the implants were not reasonably fit for their intended purpose, redhibition is the avoidance of a sale on account of some defect in the product that would render an item useless or so inconvenient to use that it would be presumed that a buyer would not have bought the thing had he known of the defect.[12] Since plaintiff has presented no competent evidence of a defect, and has basically abandoned her lawsuit, plaintiff's redhibition claim is without merit.[13]

However, Mentor did not address this argument except to argue that the LPLA is applicable to this action. A review of the petition shows that plaintiff did assert a cause of action in redhibition, alleging that the implants were not reasonably fit for their intended purpose. The summary judgment evidence failed to disclose any defect existing in the implant at the time of its manufacture. Mentor is entitled to summary judgment as a matter of law on the plaintiff's redhibition claim.

Accordingly, for the reasons assigned, the motion by defendants, Mentor Corporation and Mentor H/S, Inc. ("Mentor"), for summary judgment (doc. 12), is hereby

9. La.R.S. 9:2800.56.

10. *Grenier v. Medical Engineering Corp.*, 243 F.3d 200 (5th Cir.2001), *citing Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir.2000), *McCarthy v. Danek Medical, Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999).

11. La.R.S. 9:2800.55.

12. La.Civ.Code Art. 2520.

13. *See Grenier*, 243 F.3d at 207.

GRANTED and judgment shall be entered in favor of defendant.