# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2022

Lyle W. Cayce
Clerk

No. 21-30296

Clifford Phillips; Linda Bailey Phillips,

*Plaintiffs—Appellants*,

*versus*

Medical Device Business Services, Incorporated; DePuy Synthes Sales, Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:19-CV-1447

Before Jolly, Smith, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Relying solely on Louisiana redhibition law, Linda Phillips and her husband sued the companies that produced the knee implant and bone cement used in her first surgery. After her revision surgery two years later, they assert that the bone cement used in the first surgery failed. The district

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

court granted summary judgment for Defendants, in part because it found that the Phillipses failed to identify a defect in the bone cement.  We affirm.

## I.

On March 15, 2016, seventy-year-old Linda Phillips had a knee replacement surgery performed by Dr. David Trettin.  The surgery involved Dr. Trettin implanting a DePuy P.F.C. Sigma Rotating Platform Knee.  In doing so, Dr. Trettin applied DePuy's SmartSet bone cement to the tibial side of the leg (i.e., the portion of the knee attached to the calf).  Dr. Trettin testified that the surgery went according to plan.

Months after her surgery, Phillips continued to have problems with her knee.  Phillips eventually sought out a new doctor, Timothy Randell, to address her continued pain.  Dr. Randell identified a mechanical loosening in the knee and performed a revision surgery on February 12, 2019.  During the revision surgery, Dr. Randell found that "[t]he tibial component was loose. The cement mantle was noted to be well fixed to the bone, but the implant was not well fixed to the cement mantle."  Dr. Randell further found that "[t]he tibial component was removed with significant ease."  Presumably based on these findings, Dr. Randell testified that "the glue worked on the bone, but the glue didn't work on the implant," and that "you just don't know if that glue never stuck to the implant to start with, or at any point along the process, that glue came off."

Dr. Randell also testified unequivocally that there was no evidence from his surgery that that there was any defect in the DePuy prosthesis or bone cement, and that there was a risk of loosening even if the implant is well designed, the patient is compliant, and the doctor performs the surgery appropriately.  He did not know what caused the implant not to be well fixed and stated that he "wouldn't want to speculate at all about what would cause it not to be well fixed."  Dr. Trettin also agreed that knee revision surgery

No. 21-30296

"doesn't mean there's a defect in the product," and agreed that failure can happen "for a variety of reasons, [at] no fault of the patient, the surgery, or the device."

In September 2019, Linda Phillips and her husband, Clifford Phillips, filed a state-court suit against Medical Device Business Services, Inc., and DePuy Synthes Sales, Inc., which designed and sold the artificial knee, the cement, and the tools used during Ms. Phillips's knee replacement. The Phillipses alleged that the "DePuy Sigma knee assembly" was defective and caused Linda Phillips pain and suffering. Defendants removed the matter to federal court. Defendants later moved for summary judgment, arguing that the Phillipses failed to produce any evidence of a defect (with the cement or otherwise), and that the Phillipses had failed to prove causation. The district court granted Defendants' motion. The Phillipses timely appealed.

## II.

This court reviews a grant of a motion for summary judgment de novo, and applies the same standard as the district court, viewing the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Courts do not disfavor summary judgment, but, rather, look upon it as an important process through which parties can obtain a 'just, speedy and inexpensive determination of every action.'" *Goldring v. United States*, 15 F.4th 639, 644 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). A party that asserts that there is a genuine dispute as to any material fact must support its assertion by citing to "particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).

No. 21-30296

### III.

The parties primarily dispute whether Appellants are required to identify a defect to succeed on their redhibition claim.[1] It is undisputed that Appellants' only asserted claim is one for redhibition under Louisiana law. In Louisiana, "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold." LA. CIV. CODE art. 2520. To prevail on their redhibition claim, plaintiffs must prove that "(1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that [a plaintiff] would not have bought it had he known of the defect; (2) that the defect existed at the time he purchased the thing, but was neither known [n]or apparent to him; [and] (3) that the seller was given the opportunity to repair the defect." *Alston v. Fleetwood Motor Homes of Ind. Inc.*, 480 F.3d 695, 699 (5th Cir. 2007) (citation omitted). "Proof of the defect may be made by direct or circumstantial evidence." *Atl. Specialty Ins. Co. v. Porter*, No. 15-570, 2016 WL 6833082, at *6 (E.D. La. Nov. 21, 2016). "[T]o make out a prima facie case of redhibition the buyer need not prove

---

[1] We note that the district court found that "[i]n addition to not identifying any specific evidence of a defect in the SmartSet cement, Plaintiffs have failed to identify specific evidence in the record on the other elements of a redhibition claim." Specifically, the district court pointed out that "Plaintiffs have not identified specific evidence in the record that any alleged defect was hidden, as required under La. Civ. Code article 2520." This is a finding that Appellants completely fail to address in their opening brief. That failure is an independent ground on which to affirm the district court. *See United Paperworkers Intern. Union AFL-CIO, CLC v. Champion Intern. Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990) ("[A]n appellant abandons all issues not raised in its *initial* brief."). At oral argument, Appellants argued that they had addressed this in their opening brief by generally arguing that the district court and Appellees focus on the elements of a Louisiana Products Liability Act claim rather than a redhibition claim. Such opaque briefing is inadequate to properly challenge the district court's finding. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

4

the underlying cause of the redhibitory defect involved, but only that the defect existed." LA. CIV. CODE art. 2530 Revision cmt. (b).

Appellants have made clear that they cannot identify a specific defect in the bone cement. In their responses to Defendants' interrogatories, they stated that they were "not sure why the product failed, but the failure occurred at a time and in a fashion that would permit [Phillips] to presume the failure was due to manufacturer's defects in the product." In their briefing before the district court, Appellants stated only that the bone cement was "defective in some fashion." But this approach runs afoul of Louisiana redhibition law, as Louisiana courts have explained that a buyer must show evidence of a specific defect that is "a characteristic or component of the thing sold, rather than the entire thing itself." *Mire v. Eatelcorp., Inc.*, 927 So. 2d 1113, 1118 (La. App. 1 Cir. 2005); *see also Jordan v. Sec. Co.*, 425 So. 2d 333, 335 (La. App. 3 Cir. 1982). This makes sense, as the Louisiana Civil Code provides only that a "seller warrants the buyer against redhibitory defects, or vices, *in the thing sold*." LA. CIV. CODE art. 2520 (emphasis added).

Appellants contend that they need not identify a defect because they are entitled to an inference that the cement was defective if it failed in normal use. Such an argument may make more sense in a case where a product fails in normal use only when it is defective. But the evidence makes clear that is not the case here. It's true that Dr. Randell testified that the "tibial component was loose," that it was "removed with ease," and that "the glue worked on the bone, but the glue didn't work on the implant." But both doctors were unequivocal: in this context, the failure of the cement to adhere does not mean that the cement was defective. Dr. Trettin agreed that failure can happen "for a variety of reasons, [at] no fault of the patient, the surgery, or the device." He further confirmed that knee revision surgery "doesn't mean there's a defect in the product." Likewise, Dr. Randell stated that he

did not know what caused the implant not to be well fixed, and that he "wouldn't want to speculate at all about what would cause it not to be well fixed." He agreed there was "no evidence" of "any defect in the Depuy prosthesis or bone cement," and that there was a risk of loosening even without a defect. Accordingly, although there is some evidence that the cement "didn't work on the implant," there is no evidence that this happened *because of a defect*. Appellants have therefore failed to present evidence by which a jury could find that a defect existed. *See Ezell v. Gen. Motors Corp.*, 446 So. 2d 954, 956 (La. App. 3 Cir. 1984) ("He need not prove the underlying cause of the defect, but only that it existed.").

The cases Appellants point to do not stand for the proposition for which Appellants cite them. Perhaps the strongest case for Appellants is *Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc.*, 315 So. 2d 660 (La. 1975). In that case, a school's air conditioning unit broke down because the compressor failed as a result of a malfunctioning internal mechanical part. *Id.* at 661. "Breakdown inspection revealed that at least four of the six pistons and connecting parts and at least six suction valves of the compressor were broken." *Id.* The school sued, the district court entered judgment in favor of the manufacturer, and the Louisiana Third Circuit affirmed. The Louisiana Supreme Court reversed. It held, as discussed above, that the school needed only to demonstrate that there was a defect in the manufacture, not the cause of the defect. *Id.* at 662. It further held that "under these circumstances" an inference could be drawn that a fault existed in the manufacture of the compressor at the time of the installation, in part because the compressor worked for only twenty-five percent of the time it was designed to last. *Id.* at 663. This holding is not surprising, though, as the school had identified a defect—the malfunctioning of the internal mechanical part. Indeed, the best reading of *Moreno's* is that the court held that evidence supported a finding that the defect the school identified existed

"in the manufacture"—a requirement of today's Louisiana Civil Code article 2530—given that the court emphasized that "[e]vidence in the record established that there was no fault in the installation or maintenance of the compressor or its components." *Id.* at 662. Accordingly, *Moreno's* does not support Appellants' proposition that simply because a device fails, the buyer is necessarily entitled to an inference that it was defective.

At oral argument, the sole Louisiana Supreme Court case Appellants cited to support their position was *Young v. Ford Motor Co.*, 595 So. 2d 1123 (La. 1992). In that case, the plaintiff purchased a truck from defendant Ford Motor Co. "Within three days of the purchase, Young had returned to the dealer complaining about one of a number of major problems that had surfaced with the truck." *Id.* at 1125. The problems included an engine knock which required the replacement of an ignition switch and two air pollution pumps, peeling hood paint, defective breaks, issues with the short block assembly, and a missing spring in the shift/steering column. *Id.* at 1125 n.1. Given the number of defects that the plaintiff cataloged with the truck, it is unsurprising that the issue in *Young* was not whether a defect existed, but rather what damages a plaintiff can recover in redhibition. The court stated in passing that "[a] buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects." *Id.* at 1126. This is simply a restatement of the law discussed above as it applies to vehicles and does not support Appellants' argument that they are entitled to an inference in this case.

A binding case from this circuit is directly on point and illustrates that Appellants' argument is meritless. In *Grenier v. Medical Engineering Corp.*, the plaintiff had breast augmentation surgery, in which a surgeon inserted silicone breast implants. 243 F.3d 200, 203 (5th Cir. 2001). A decade later, the plaintiff began having health problems. *Id.* Her surgeon determined that

7

while the left implant had not ruptured, a certain amount of silicone gel was outside the implant shell but within the breast tissue, a phenomenon known as "gel bleed." *Id.* The plaintiff sued the implant manufacturer, asserting a redhibition claim. *Id.* Although the Fifth Circuit disagreed with the district court's determination that the plaintiff's claim was time-barred, it held that her redhibition claim failed because she failed to provide evidence of a defect. It held that "a redhibition claim requires a showing of some vice or defect in the thing sold and [the plaintiff] failed to submit evidence of the alleged defects in [defendant's] breast implants. Because she presented no competent evidence of defect, [plaintiff's] redhibition claim is without merit." *Id.* at 207. Appellants attempt to distinguish *Grenier* by pointing out that the case also dealt with a products liability claim and that the plaintiff's redhibition claim had been dismissed as time-barred at the district court. But those differences are irrelevant, and Appellants entirely ignore the *Grenier* court's holding that is exactly on-point here.

In short, Appellants have failed to provide competent evidence of a defect, and they are not entitled to an inference that a defect existed on these facts. Because we hold that the district court properly granted summary judgment because Appellants failed to identify a defect, we do not reach the parties' arguments regarding causation.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.