IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 94-30263

---

CARL O. BROWN, JR.,

Plaintiff-Appellant,

versus

R. J. REYNOLDS TOBACCO
COMPANY, ET AL.,

Defendants,

R. J. REYNOLDS TOBACCO
COMPANY, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

(May 5, 1995)

Before HIGGINBOTHAM, SMITH, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Carl Brown filed this products liability suit against various cigarette manufacturers, claiming they were responsible for his throat cancer. The district court granted summary judgment in favor of the cigarette manufacturers and Brown appeals. This case turns on whether its merit is to be measured by the Louisiana Products Liability Act effective September 1, 1988, or Louisiana tort law in place before that date. We find that the district court properly applied Louisiana's Products Liability Act to Brown's claim and affirm the summary judgment.

I.

In 1991, Brown was diagnosed with and treated for throat cancer.  Brown, alleging that the cancer resulted from his forty-five year smoking habit, filed suit in state court against numerous cigarette manufacturers.  He claimed recovery under four theories: unreasonably dangerous per se; ultrahazardous activity; misrepresentation, concealment, and conspiracy; and design defect.  The cigarette companies removed the action to federal court on diversity grounds.  On November 3, 1993, the district court granted partial summary judgment against Brown on his first three claims.  On April 13, 1994, the court granted summary judgment against Brown on his design defect claim.  Brown filed this appeal.

II.

A.

In 1986, the Louisiana Supreme Court concluded that a manufacturer could be held strictly liable for injuries caused by a product found to be "unreasonably dangerous per se."  Halphen v. Johns-Manville Sales Corp., 484 So. 2d 110, 113 (La. 1986).  Soon after the Halphen decision, the Louisiana legislature passed the Louisiana Products Liability Act, which became effective on September 1, 1988.  1988 La. Acts No. 64 (codified at La. Rev. Stat. Ann. §§ 9:2800.51-59 (West 1991)).  The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."  Id. § 9:2800.52.  The unreasonably dangerous per se theory is not among those recognized by the LPLA, see Gilboy

2

<u>v. American Tobacco Co.</u>, 582 So. 2d 1263, 1264 (La. 1991); nor are any of Brown's other theories, except design defect.[1]  One of the legislature's primary purposes in enacting the LPLA was to overrule <u>Halphen</u>.  <u>See</u> Senate Comm. on Judiciary A, Minutes of Meeting of May 17, 1988, at 3-5; <u>see generally</u> John Kennedy, <u>A Primer on the Louisiana Products Liability Act</u>, 49 La. L. Rev. 565 (1989) [hereinafter <u>A Primer</u>].[2]

The issue in this case is whether the law applicable to Brown's action is the law in effect when Brown was significantly exposed to tobacco products or the law in effect when Brown's disease manifested itself -- when the cause of action accrued. Relying on the exposure theory, Brown argues that his case is controlled by pre-LPLA law.  The district court, however, found that because Brown's first evidence of injury appeared in 1991, the lawsuit was controlled by the LPLA.

The Louisiana Supreme Court has ruled that the LPLA does not apply retroactively because it is "substantive."  <u>See</u> <u>Gilboy</u>, 582 So. 2d at 1264.  As a general rule, "the determinative point in time separating prospective from retroactive application of an

---

[1]     Brown does not contest on appeal the district court's decision to grant summary judgment against him on his design defect claim.  To recover under a design defect theory, the LPLA requires that a claimant introduce evidence of a safer alternative design. La. Rev. Stat. Ann. § 9:2800.56(1) (West 1991).  Brown did not satisfy this burden.

[2]     John Kennedy, "along with former professor H. Alston Johnson III, drafted the [LPLA].  During the session in which the legislature enacted the new legislation, [Kennedy] worked for its passage as Special Counsel to Governor Buddy Roemer."  49 La. L. Rev. at 565 (editor's note).

enactment is the date the cause of action accrues." Cole v. Celotex Corp., 599 So. 2d 1058, 1063 (La. 1992) (Cole I).  The LPLA contains no language suggesting that the exposure rule or any other rule, other than the general rule, applies.  As such, we conclude that the LPLA applies only to those causes of action that accrued on or after September 1, 1988.  Kennedy, A Primer, supra, at 624; see also William E. Crawford & David J. Shelby II, Review of Recent Developments:  1991-1992 Torts, 53 La. L. Rev. 1011, 1014-15 (1993).

Brown could recover under pre-LPLA law if there were evidence that his cause of action accrued before September 1, 1988.  A cause of action accrues when a plaintiff may bring a lawsuit.  Cole I, 599 So. 2d at 1063 n.15.  In a negligence action, for instance, the claimant must be able to allege fault, causation, and damages.  Id. "'Louisiana is generous in its conception of damages, the slightest being sufficient to support an action.'"  Id. (quoting 12 Ferdinand F. Stone, Louisiana Civil Law Treatise:  Tort Doctrine § 12 (1977)).

Determining when a cause of action accrues has been the subject of numerous decisions, especially in the area of prescription.  Under Louisiana Civil Code article 3492, delictual actions are subject to a one year liberative prescription, which runs "from the day injury or damage is sustained."  "Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action."  Cole v.

4

Celotex Corp., 620 So. 2d 1154, 1156 (La. 1993) (Cole II); see also Jones v. Texas & P. Ry. Co., 51 So. 582, 583 (La. 1910). Louisiana courts have recognized that a claimant may not become aware of damages suffered as a result of latent diseases until many years after the damage has been sustained. See, e.g., Owens v. Martin, 449 So. 2d 448, 451 n.4 (La. 1984). In these cases, prescription will begin to run when the damage is sustained. However, contra non valentem will suspend the running of the prescriptive period until the claimant knows or should reasonably know that he has suffered damages. See id.; see also Harvey v. Dixie Graphics, Inc., 593 So. 2d 351, 354 (La. 1992); Corsey v. State Dep't of Corrections, 375 So. 2d 1319, 1322 (La. 1979). With a latent disease, this is usually upon diagnosis. See Owens, 449 So. 2d at 451 n.4.

Brown's symptoms appeared in early 1991. Summary judgment was proper because Brown produced no evidence that he suffered damages or bodily injury, latent or otherwise, before September 1, 1988. Cf. Cole I, 599 So. 2d at 1084 (Dennis, J., concurring) ("The medical evidence in the present case established that the plaintiffs began to sustain tissue damage shortly after the initial inhalation of asbestos fibers; and that plaintiffs sustained distinct bodily injury in each year of their employment. . . . Because the plaintiff workers sustained actual harm to their lungs prior to October 1, 1976, their causes of action . . . accrued prior to the effective date of [the statute]."). The only evidence that Brown produced pertaining to his injury was an affidavit from

5

Dr. Joel Nitzkin, an expert in the epidemiology of cancer. Dr. Nitzkin stated that there "can be" a ten-year latency period "between a person's exposure to cigarette smoke and the subsequent development of laryngeal cancer." Dr. Nitzkin did not interview Brown, examine Brown, or review Brown's medical records. He did not discuss Brown's case or how far Brown's particular cancer had advanced when it was diagnosed and treated. In short, the affidavit is not sufficient to show that Brown suffered damages before the effective date of the LPLA.

B.

Relying on the Louisiana Supreme Court's reasoning in Cole I, Brown argues that accrual analysis is inapplicable. In Cole I, an asbestos case, one of the main issues was how to allocate fault among solidarily liable defendants. The answer turned on whether the applicable law was the Louisiana Comparative Fault Law, Act 431 of 1979, which became effective on August 1, 1980, or pre-Act 431 law.

The court began by stating that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." Id. at 1063 (quoting La. Civ. Code Ann. art. 6 (West 1993)). Article 6 required the court to conduct a two-part inquiry: "First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive." Cole I, 599 So. 2d at

6

1063.  The court of appeal had concluded that the Comparative Fault Law was substantive and, therefore, the determinative point was when the cause of action accrued.  It applied the old law concluding that the claim accrued before the Comparative Fault Law became effective.

The Louisiana Supreme Court came to the same conclusion, but by a different route.  It found determinative the statute's "expressed legislative intent."  Id. at 1064.  Section 4 of Act 431 stated:  "The provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective."  Id. (emphasis added and footnote omitted). The court rejected the suggestion that it read the term "events" as "encompassing the requisites for asserting a cause of action, which are synonymous with the requisites for a cause of action accruing." Id. at 1065.  Instead, the court interpreted the term "events" as "the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later. . . . [W]hen the tortious exposures occurring before Act 431's effective date are significant and such exposures later result in the manifestation of damages, pre-Act law applies."  Id. at 1066.

In rejecting the view that "events" is synonymous with the requisites for a cause of action accruing, the court noted that the lengthy latency period between the tortious conduct (i.e., exposure) and the appearance of injury made it difficult, if not impossible, to pinpoint the date on which the plaintiff contracted

7

the disease.  Id. at 1065-66; see also R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 780 (5th Cir. 1963) (in a case involving cancer of the larynx and vocal cords resulting from years of smoking, the court found that "[t]he interplay of objective manifestation of the disease and subjective knowledge by the plaintiff makes it impossible in this case to fix the date of the commencement of prescription as a matter of law").  "[T]his inability to pinpoint when injuries were sustained in asbestosis cases renders determining the date on which a plaintiff's cause of action accrued a herculean task."  Cole I, 599 So. 2d at 1066.

The Cole I court also relied on Koker v. Armstrong Cork, Inc., 804 P.2d 659 (Wash. Ct. App.), review denied, 815 P.2d 265 (Wash. 1991).  In 1985, Koker, a worker exposed to asbestos, filed suit against asbestos manufacturers.  The Washington legislature had passed its Tort Reform Act four years earlier.  Koker argued that his claim was not controlled by the Act, which declared that it applied "'to all claims arising on or after July 26, 1981.'"  Id. at 662 (emphasis added).  The court found that when the Act was originally drafted, the legislature had used the word "accruing" rather than "arising."  Id.  Noting that the terms are not synonymous, the court held that "a claim arises when the injury producing event takes place, not when the claim is filed."  Id. at 663.  Thus, "[b]ecause the harm here results from exposure (continuous in nature), it appears that substantially all of the events which can be termed 'injury producing' occurred prior to the adoption of the Act."  Id. at 663-64.

8

Brown suggests that we, too, should tailor our decision to the special circumstances presented by torts causing long-term latency diseases. Brown cites lower court cases interpreting <u>Cole I</u> broadly. We also have found cases in which courts appear willing to read "arising" and "events" language into otherwise silent statutes.

In <u>Coates v. AC & S, Inc.</u>, 844 F. Supp. 1126, 1131 (E.D. La. 1994), the court held that <u>Cole I</u> "adopted the 'significant exposure' test to determine the law applicable to negligence causes of action in long-term latency disease cases." In <u>Coates</u> the court interpreted the Comparative Fault Law and not the LPLA, and Coates, unlike Brown, sued under a negligence theory rather than a strict products liability theory. The court in <u>Powell v. B.P. Chems., Inc.</u>, 847 F. Supp. 444 (M.D. La. 1993), stated the <u>Cole I</u> rule more broadly. It held that in Louisiana, "a cause of action for latent injuries sustained due to tortious exposures to a substance arises at the time when there are significant and continuous exposures to the substance." <u>Id.</u> at 447. However, in <u>Powell</u>, the plaintiffs alleged that executive officers negligently breached their duty to maintain a reasonably safe workplace; the court did not invoke principles of products liability.

In <u>St. Paul Fire & Marine Ins. Co. v. Smith</u>, 609 So. 2d 809 (La. 1992), the court seemed to read "arising out of events" language into a workers' compensation statute, Act 454 of 1989 amending La. Rev. Stat. Ann. § 23:1103. Section 23:1103 provides that an employer can be reimbursed for its workers' compensation

9

outlays out of any damages recovered by the employee.  Before Act 454, employers could recoup workers' compensation costs only out of damage awards for medical costs and lost wages.  Act 454 took effect on January 1, 1990.

In St. Paul, the employer's insurer sought to recover its workers' compensation outlays from the employee's non-economic damage awards.  Because the employee had sustained his injuries on May 19, 1988, the issue was whether the new act applied retroactively.  The court first looked to Cole I and found that, unlike the comparative fault statute, Act 454 contained "no clear and unmistakable expression of legislative intent regarding retrospective or prospective application."  Id. at 817.  The analysis then shifted to the second step:  whether the statute was substantive, procedural, or interpretive.  The court concluded that the Act was substantive and, therefore, applied prospectively only. Id. at 817-22.  In the opinion's concluding paragraph, the court noted that "this change in the law . . . is substantive and thus cannot be applied retroactively to rights and duties arising out of events which occurred prior to this change in the law."  Id. at 822 (emphasis added).  The language is curious because the "arising out of events" language did not appear in the statute.

St. Paul gives little guidance because within two years, the Louisiana Supreme Court decided Stelly v. Overhead Door Co., 646 So. 2d 905, 912 (La. 1994).  In Stelly, the court faced the issue of whether Act 454's amendment of section 23:1032 was retroactive. In deciding that the amendment worked a substantive change and

10

could not be applied retroactively, the court used "accruing" language rather than St. Paul's "arising out of events" language. Id. at 912.

Additional reasons exist not to rely on St. Paul. The issue in St. Paul was whether the statute had only a prospective reach. That the LPLA has only a prospective reach is not disputed here. Rather, the issue is whether Brown's exposure was sufficient to fix his claim before the LPLA became effective. Moreover, Louisiana courts take into account the history and policy behind a statute when interpreting its provisions, and the court in St. Paul had no occasion to interpret the LPLA. See Stelly, 646 So. 2d at 909. Overruling Halphen was one of the legislature's main objectives in enacting the LPLA. Adding Cole I to the LPLA would give Halphen a vitality that the Louisiana legislature most likely did not anticipate or intend. Lastly, the St. Paul court was not faced with the difficulties attending latent illnesses; it was clear that the plaintiff's cause of action accrued before the statute's effective date.

It is true that some decisions state the rule that the LPLA is not retroactive with language such as the "LPLA does not apply to cases arising before September 1, 1988." Berry v. Commercial Union Ins. Co., 565 So. 2d 487, 490 (La. Ct. App.) (emphasis added), writ denied, 569 So. 2d 959 (La. 1990); accord Cates v. Sears, Roebuck & Co., 928 F.2d 679, 683 n.8 (5th Cir. 1991); Laing v. American Honda Motor Co., 628 So. 2d. 196, 201 n.1 (La. Ct. App. 1993), writ denied, 635 So. 2d 239 (La. 1994); see also Clement v. Griffin, 634

11

So. 2d 412, 423 n.1 (La. Ct. App.), <u>writ denied</u>, 637 So. 2d 478, 479 (La. 1994); John N. Kennedy, <u>The Dimension of Time in the Louisiana Products Liability Act</u>, 42 La. B.J. 15, 15 (1994). Under the <u>Koker</u> court's analysis, relied on in <u>Cole I</u>, this "arising" language lends support to Brown's ably argued contention that the relevant point of inquiry is when the injury-producing events took place. <u>See</u> <u>Koker</u>, 804 P.2d at 663.

We cannot be faithful to our <u>Erie</u> duty, however, and follow what is most likely stray language used by courts and commentators not faced with the circumstances before us. <u>See</u> <u>American Bank & Trust v. FDIC</u>, No. 94-40377, slip op. at 3239 (5th Cir. Mar. 29, 1995). As one of the LPLA's drafters put it:

> Section 2 of . . . the LPLA[] provides simply that '[t]his Act shall become effective September 1, 1988.' There can be no doubt, therefore, that the LPLA will apply in those cases where the claimant's cause of action has accrued (because all of the elements of his cause of action, including the sustaining of damage, have occurred) on or after September 1, 1988.

Kennedy, <u>A Primer</u>, <u>supra</u>, 49 La. L. Rev. at 624 (footnote omitted). Nowhere in the language of the LPLA do we find an exemption from the accrual rule for tobacco or asbestos cases, and we cannot read such language into the statute.[3]

---

[3] This conclusion finds further support in the LPLA's legislative history. After the Senate's Judiciary Committee recommended the bill favorably to the full Senate, a floor amendment was offered that would have excluded tobacco and asbestos manufacturers from the LPLA. <u>See</u> Senate Legislative Calendar (May 25, 1988). The Senate rejected the amendment. <u>Id.</u>

The only other piece of legislative history that speaks to the issue before us is an amendment that was proposed by the bill's sponsor but, in a compromise, deleted. That amendment would have changed section two of the Act to read: "This Act shall become

12

C.

Although we recognize the difficulties of applying an accrual test to determine what law applies in cases involving latent injuries, see Hudson, 314 F.2d at 780, we are constrained by the language of the statute. The LPLA states only that it "shall become effective on September 1, 1988." There is no "arising" or "events" language to support a departure from the general rule that the applicable law is determined according to the date a cause of action accrues. Because there is no evidence that Brown sustained injury, latent or otherwise, before the LPLA's effective date, we find that the LPLA applies and that the district court properly granted summary judgment in favor of the cigarette manufacturers.

III.

Brown also argues that applying the LPLA deprives him of due process. This contention begs Brown's central question, however, because the only due process claim that Brown could raise is that by applying the LPLA to this case, we deprive him of his vested

---

effective September 1, 1988 and shall apply to causes of action for damages sustained on or after that date." Senate Legislative Calendar (May 17, 1988); S. 684 (original version). This amendment would suggest that its sponsor wanted the Senate to adopt an accrual basis for determining what law applies to causes of action. Its deletion, the argument would run, means that the legislature intended for a rule other than accrual to apply.

While this argument has some appeal, its conclusion is not borne out by the facts. The legislature agreed "to remove this provision, substitute the [current] language and allow the issue of retroactivity to be determined by whether the LPLA is deemed to be a substantive or procedural law." Kennedy, A Primer, supra, 49 La. L. Rev. at 625. Thus, rather than conveying a particular message, the amendment's deletion was intended to convey no message.

13

right to recover under pre-LPLA law.  This argument fails because a claimant only gains a vested right in a cause of action when that cause accrues.  See Cole I, 599 So. 2d at 1063 ("Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested.").  For the reasons we have stated, there is no evidence indicating that Brown's action accrued before the LPLA's effective date.  Applying the LPLA does not deprive Brown of any right secured to him by the Due Process Clause.

AFFIRMED.