**Carol GUIDRY, et al**

v.

**AVENTIS PHARMACEUTICALS, INC., et al**

**No. CIV.A.03–493 C.**

United States District Court, M.D. Louisiana.

Jan. 18, 2006.

Michael Carter Palmintier, Degravelles, Palmintier, Holthaus & Fruge', Baton Rouge, LA, for Plaintiff.

James B. Irwin, V, Kim E. Moore, Stephanie Lottinger Irwin, Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, Harvey L. Kaplan, John F. Kuckelman, Shool Hardy & Bacon, LLP, Kansas City, MO, for Defendants.

## RULING

TYSON, Chief Judge.

The court has carefully considered the petition, the record, the law applicable to this action, and the Report and Recom-

mendation of United States Magistrate Judge Stephen C. Riedlinger dated December 27, 2005. Plaintiffs' have filed an objection which the court has considered.

The court hereby approves the report and recommendation of the magistrate judge and adopts it as the court's opinion herein.

Accordingly, the motion for summary judgment filed on behalf of Aventis Pharmaceuticals, Inc. is GRANTED, dismissing the claims of plaintiffs Carol and George Guidry under the Louisiana Products Liability Act and La. Civil Code art. 2315.

### MAGISTRATE JUDGE' REPORT

RIEDLINGER, United States Magistrate Judge.

Before the court is a motion for summary judgment filed by defendant Aventis Pharmaceuticals, Inc. Record document number 60. The motion is opposed.[1]

Plaintiff Carol Guidry brought this suit against the defendant for injuries and damages she alleged were caused by taking Arava, a prescription drug manufactured by the defendant for the treatment of rheumatoid arthritis. Plaintiff alleged further that as a result of taking Arava she suffered severe injuries, including non-viral, non-alcoholic hepatitis, permanent liver damage, paraesthesia of the body, loss of strength, mobility and appetite, nausea, vomiting and aberrant olfaction. Plaintiff claimed that Arava is an unreasonably dangerous product and the defendant is liable under the Louisiana Products Liability Act (LPLA). Plaintiff's spouse also brought a claim for loss of consortium.[2] Defendant now moves for summary judgment as to all of the plaintiffs' claims.

Defendant asserted that the plaintiff has no evidence to support her claim that Arava was unreasonably dangerous in design or composition, or because of a failure to warn. Defendant also argued that the plaintiff's suit, which was filed on February 27, 2003, is prescribed because it was filed more than one year after the plaintiff became aware that her injuries and damages were related to taking Arava. In support of the motion the defendant filed a statement of undisputed material facts.[3] Defendant submitted numerous documents, medical records, affidavits and deposition testimony in support of its motion. The court has reviewed all the exhibits, and it is unnecessary to list each one submitted. The following exhibit are listed since they are specifically referred to in this report and recommendation: (1) deposition testimony of Dr. John E. Marshall;[4] (2) Tulane University Hospital and Clinic medical records;[5] (3) deposition testimony of the plaintiff Carol Guidry;[6] (4) prescribing information as of February 2000;[7] (4) deposition testimony of Dr. Virendra Joshi.[8]

In opposition to the defendant's motion the plaintiff submitted a statement of uncontested material facts,[9] and deposition

1. Record document number 71.

2. Plaintiff George Guidry alleged that he sustained a loss of consortium, services and society within the meaning of Louisiana Civil Code Article 2315. The references throughout this report to "the plaintiff", are references to plaintiff Carol Guidry.

3. Record document number 61.

4. Defendant Exhibit H, (hereafter, Marshall deposition).

5. Defendant Exhibit T.

6. Defendant Exhibit P, (hereafter, Plaintiff deposition).

7. Defendant Exhibit Q.

8. Defendant Exhibit V, (hereafter, Joshi deposition).

9. Record document number 72.

testimony of plaintiff Carol Guidry,[10] plaintiff George Guidry[11] and Dr. Marshall.[12] Plaintiff also offered the affidavits of Dr. Marshall and Christopher J. Borgert, Ph.D. and the documents attached to their affidavits.[13] However, this evidence was not considered based on the finding that the affidavits must be excluded under Rule 37(c)(1), and the finding that the information contained in Marshall's affidavit is inconsistent with his prior deposition testimony.[14]

### Applicable Law

■ Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence, or resolve factual disputes. *Id.; Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Hearsay evidence as well as uncertified, unsworn documents are not appropriate for consideration in ruling on a summary judgment motion. *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

■ The substantive law identifies which facts are material. *Love v. National Medical Enterprises*, 230 F.3d 765, 770 (5th Cir.2000). The law applicable to the plaintiff's claims is the LPLA and the applicable one year prescriptive period in La. Civ.Code art. 3492.

■ Claims brought under the LPLA are governed by the one year prescriptive period for delictual actions in Article 3492 which provides in pertinent part: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." Although prescription begins to run from the day injury or damage is sustained, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *Cameron Parish School Board v. ACandS, Inc.*, 687 So.2d 84, 88 (1997); *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir.1995); *Jones v. Honeywell Int. Inc.*, 295 F.Supp.2d 652 (M.D.La. 2003). In cases where injury or damage is not immediately apparent, prescription does not begin to run until a reasonable plaintiff would become aware of the connection between her condition and the defendant's alleged tortious actions, that is, until the plaintiff knows or should reason-

10. Plaintiff Exhibit 3.

11. Plaintiff Exhibit 4 (hereafter, G. Guidry deposition).

12. Plaintiff Exhibit 5.

13. Plaintiff Exhibits 1 and 2.

14. Record document number 89.

ably know that she has suffered damages. *Brown*, 52 F.3d at 527; *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 204 n. 2 (5th Cir.2001); *Boyd v. B.B.C. Brown Boveri, Inc.*, 656 So.2d 683, 686 (1995).

■ Under the Louisiana Products Liability Act, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the plaintiff's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product unreasonably dangerous, and (4) that the plaintiff's damage arose from a reasonably anticipated use of the product by the plaintiff or someone else. LSA–R.S. 9:2800.54(A). *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir.2002).[15]

The statute sets forth the four theories under which the plaintiff can establish that a product is unreasonably dangerous:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*Id.*

To maintain a construction or composition defect claim under the LPLA a plaintiff must demonstrate that at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product, or from identical products manufactured by the same manufacturer. LSA–R.S. 9:2800.55. *Id.*

A product is unreasonably dangerous in design if at the time the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the plaintiff's damage, and (2) the likelihood that the product's design would cause the plaintiff's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting the alternative design and the adverse effect if any of the alternative design on the utility of the product. LSA–R.S. 9:2800.56; *Theriot v. Danek Medical, Inc.*, 168 F.3d 253, 255 (5th Cir.1999); *McCarthy v. Danek Medical, Inc.*, 65 F.Supp.2d 410, 411 (E.D.La.1999).

■ Under LSA–R.S. 9:2800.57 in order to prove that a product is unreasonably dangerous because of an inadequate warning, a plaintiff must prove that the product has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic. *Stahl*, 283 F.3d at 264. In claims involving drugs or medical devices which are dispensed by a physician, Louisiana law applies the learned intermediary doctrine. *Id.* at 265. The learned intermediary is the one to whom the warning is directed and is the one who makes the decision whether to use the product. The manufacturer has the duty to warn the intermediary of inherent dangers not within the knowledge of or obvious to the average intermediary. *Zachary v. Dow Corning Corp.*, 884 F.Supp. 1061, 1065 (M.D.La. 1995); *Stahl*, 283 F.3d at 265–66. Therefore, in the learned intermediary context, the plaintiff must show that the defendant

---

**15.** In this case it is undisputed that the defendant was a manufacturer of Arava and that prescribing Arava was a reasonably anticipated use of the produce.

failed to warn or inadequately warned the physician of a risk associated with the product that was not otherwise known to the physician. Second, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Id.; Willett v. Baxter Int'l Inc.*, 929 F.2d 1094, 1098 (5th Cir.1991).

■ The mere fact that an accident occurred is not sufficient to establish that a product is defective or unreasonably dangerous. *Morris v. United Services Auto. Assn.*, 32,528 (La.App. 2 Cir. 2/18/00) 756 So.2d 549, 558.

### *Analysis*

**Prescription**

■ Defendant asserted that prescription began to run on November 26, 2001. Plaintiff, who had been taking Arava since September 2001,[16] began experiencing symptoms of nausea, vomiting, diarrhea, loss of weight and problems with her sense of smell, in the last week of November 2001. When the plaintiff called Dr. Marshall on November 26 he advised her to stop taking Arava because it was possible that the new medicine, which he had recently added to her regimen of arthritis treatment, was causing her symptoms.[17] Defendant argued that the plaintiff's testimony demonstrates that she understood in November 2001 that Dr. Marshall was taking her off the Arava because he believed it could be causing the problems she was reporting. However, the plaintiff waited until February 27, 2003 to file suit.

Plaintiff did not specifically address any of the arguments or evidence cited by the defendant on the issue or prescription. Instead, the plaintiff argued that she filed suit within one year of the time when she reasonably should have known that Arava was the cause of her losses. According to the plaintiff, knowledge of the link between the drug Arava and her condition was unknown to her until her spouse found an article on the internet in June 2002.[18]

Plaintiff's argument is unpersuasive. The fact that the plaintiff's spouse did not become aware of the connection between Arava and liver problems until June 2002 does not contradict or diminish what the plaintiff knew in November 2001. Plaintiff presented no evidence to dispute her own testimony that in the last week of November 2001 she was advised by Dr. Marshall to stop taking Arava because it could be causing the onset of the gastrointestinal problems she was reporting. The only reasonable inference that can be drawn from the evidence regarding the onset of the symptoms and the conversation with Dr. Marshall, is that it was then that the plaintiff became aware of the connection between her condition and the defendant's product, and the plaintiff's alleged injury and damages from Arava had manifested with sufficient certainty to support accrual of a cause of action. Plaintiff's continued symptoms through March 2002 and subsequent diagnosis of steatohepatitis do not support a competing inference or contrary conclusion.[19] It is not necessary for the

---

16. Marshall wrote the prescription for Arava on September 25, 2001 because the plaintiff was not responding sufficiently to methotrexate. Marshall deposition, pp. 26–27, 33.

17. Marshall deposition, pp. 18–22, 26–27, 33, 135, 144–45; plaintiff deposition, pp. 114–15, 128–32, 147–48, 157–62.

18. G. Guidry deposition, pp. 55–56.

19. After discontinuing Arava and later methotrexate and Vioxx, the plaintiff continued to have nausea, vomiting, diarrhea and weight loss. Dr. Marshall ultimately referred the plaintiff to specialists who performed a liver biopsy on March 4, 2002 and shortly thereafter diagnosed the plaintiff with steatohepatitis. Marshall deposition, pp. 144–172, Joshi deposition, p. 56; Defendant Exhibit T.

plaintiff to have experienced all of the symptoms, injuries or damages in November 2001 for prescription to begin to run.[20]

## Claims of Defective Composition and Design

■ Assuming that the plaintiff's claim is not prescribed, the record establishes that the plaintiff has no evidence to support her claim that Arava is unreasonably dangerous in composition or design. Plaintiff failed to offer any arguments or evidence to show that the Arava prescribed by Dr. Marshall was defective in its composition, i.e., deviated in a material way from the defendant's specifications or performance standards for the product, or from identical products manufactured by the defendant.

■ Plaintiff also failed to establish a genuine dispute for trial on the claim that Arava is unreasonably dangerous in design. Plaintiff relied on the affidavits of Dr. Marshall and Borgert, arguing that based on this evidence a reasonable jury could find that the product was faulty in design because of severe hepatic reactions in some patients who are treated with Arava, or Arava in combination with methotrexate. However, the court has determined that the information relied upon by the plaintiff cannot be considered. Even if this evidence could be taken into account, it does not support any reasonable inference that there existed an alternative design for Arava that was capable of preventing the plaintiff's damage. Plaintiff has no evidence to support this essential element of her claim of unreasonably dangerous design under LSA–R.S. 9:2800.56.[21]

## Claim of Inadequate Warning

■ Plaintiff failed to come forward with any evidence to dispute Dr. Marshall's testimony that he was familiar with the information contained in the package insert and other written material on Arava provided to him by the defendant. Nor did the plaintiff present .any evidence to dispute that Dr. Marshall was specifically aware of prescribing information provided by the defendant which stated that potential side effects of Arava included elevated liver enzymes, nausea, vomiting, diarrhea and abnormal hepatic function, and that he informed the plaintiff of these side effects at the time he prescribed the drug. Plaintiff also has no evidence to contradict Dr. Marshall's testimony that given the circumstances as they were in September 2001, he took appropriate action to prescribe Arava for the plaintiff and he would not change that decision.[22] To the extent the plaintiff argued that the prescribing information for Arava failed to include warnings or contraindications for the combined therapy applicable to the plaintiff, this argument is unsupported by the record. A review of the prescribing information supplied to physicians shows that precautions for drug interactions included statements that co-administration with methotrexate increased the risk for hepatoxicity and may increase side effects, and that the combined use of Arava with other named drugs, including methotrexate had not been adequately studied.[23]

---

**20.** *See, Doe v. Doe,* 671 So.2d 466, 471 (1995) (prescription runs from date plaintiff first suffers appreciable damage even though she may only later come to more precise realization of full damages suffered); *Guitreau v. Kucharchuk,* 763 So.2d 575, 580 (2000) (ignorance of the extent of injuries differs from ignorance of actionable harm which delays commencement of prescription).

**21.** *See, Theriot,* 168 F.3d at 255–56; *Green v. BDI Pharmaceuticals,* 803 So.2d 68, 72 (2001); *Seither v. Winnebago Industries, Inc.,* 2002–2091 (La.App. 4 Cir. 7/2/03) 853 So.2d 37, 41, *writ. denied,* 867 So.2d 704 (2004).

**22.** *See,* Marshall deposition, pp. 18, 23, 33–38, 46–49, 55–56, 66–67, 75–77, 140–45; Defendant's Statement of Uncontested Material Facts, numbers 5 and 6.

**23.** Defendant Exhibit Q.

Plaintiff relied on information contained in the affidavits of Dr. Marshall and Borgert to support the position that the information, warnings, and precautions on Arava supplied by the defendant to Dr. Marshall in September 2001 were inadequate and misleading. With the exclusion of this information the plaintiff has no evidence to support a finding that the defendant failed to warn or inadequately warned her physician of a risk associated with the product that was not otherwise known to him.

Even if this evidence is considered it is insufficient to preclude summary judgment. Neither the affidavits nor any other evidence contained in the summary judgment record supports a reasonable inference that Arava, or the lack of an adequate warning about its effects, caused the plaintiff's alleged injuries. Notably, none of the plaintiff's treating physicians stated an opinion that Arava, taken alone or in combination with methotrexate caused the plaintiff's injuries.[24] Plaintiff's reliance on Dr. Marshall's testimony that he felt the plaintiff had problems related to the use of Arava, and that it was possible that the Arava could be cause of the symptoms the plaintiff reported in November and December 2001, is unavailing.[25] In light of the undisputed facts, Dr. Marshall's equivocal statements are insufficient for a reasonable jury to infer that Arava, or a failure to warn of the effects of Arava, was the cause of the plaintiff's injuries.

### Recommendation

It is the recommendation of the magistrate judge that the motion for summary judgment filed by defendant Aventis Pharmaceuticals, Inc. be granted, dismissing

the claims of plaintiffs Carol and George Guidry under the Louisiana Products Liability Act and La.Civ.Code art. 2315.

---

24. Defendant's Statement of Uncontested Facts, numbers 19–21. Although the plaintiff asserted that these facts are disputed, the plaintiff failed to come forward with any evidence to dispute them. Record document number 72, Plaintiff's Statement of Uncontested Material Facts.

25. Marshall deposition, pp. 17–20, 147–48.